ABRAHAM WINFIELD *vs.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF HUDSON.

1. A certificate of indebtedness issued by a municipal corporation, whereby the corporation agrees to pay to A. B., or the holder thereof, a certain sum, in the manner therein stated, is assignable, and the assignment will vest the right of action in the assignee.

2. Where the certificate provides that it shall be transferable by endorsement, it can be transferred only in that manner ; and if the holder claim as assignee, and bring suit in his own name, an averment that the certificate was for a valuable consideration, endorsed, assigned, transferred, and delivered to the plaintiff, will be sufficient.

3. Where an instrument is made assignable by statute, but not in any specified mode, and by the terms of the contract it is made assignable by endorsement, the holder may in that mode acquire title to the instrument, and a right to maintain an action thereon in his own name.

In debt. On demurrer to Narr.

The action was brought on an improvement certificate, of which the following is a copy.

" No. 50.—Improvement Certificate, $500.

This certificate entitles Shaler, Gardner & Co., or the holder, to receive of the treasurer of the City of Hudson five hundred dollars, for improvement of Palisade avenue, with interest thereon at the rate of six per cent. per annum from the time the assessment for the said work shall be confirmed by the common council, in amounts of not less than fifty dollars at any time, as the money on the said assessment shall come to the hands of the said treasurer.

And this certificate shall be receivable by the collector of assessments in payment for the assessments upon which it is drawn, and shall be transferable by endorsement. And the mayor and common council of the City of Hudson do hereby bind themselves and their successors to use due diligence in making and collecting the said assessment : and in case the said assessment is not collected to meet this certificate within one year from the date hereof, that they will pay the said sum of five hundred dollars, with interest as above stated, to the holder, upon thirty days' notice of default in the collecting of the assessment.

Witness the corporate seal of said city, hereto affixed, duly attested, this twenty-fifth day of August, in [SEAL.] the year of our Lord one thousand eight hundred and fifty-seven.

EDMUND T. CARPENTER, <em>Mayor.</em>

Attest.

CHAS. J. ROE, <em>City Clerk.</em>

(Endorsed)     SHALER, GARDNER & Co."

Submitted, on written briefs, to the CHIEF JUSTICE and Justices HAINES, VREDENBURGH, and VAN DYKE.

*J. P. Vroom*, in support of the demurrer.

This is an action on an improvement certificate, made by the corporation of the City of Hudson, under their corporate seal, to " Shaler, Gardner & Co.," who were contractors for grading and regulating Palisade avenue, in said city, and by them endorsed in blank.

1. Choses in action were not at common law assignable, so as to enable the assignee to maintain an action thereon in his own name. They were made assignable in this state, November 1st, 1797, (*Nix. Dig.* 542) and by virtue thereof bills, bonds, &c., for the payment of money may now be assigned, and an action thereon maintained in the name of the assignee. The instrument upon which this action is brought is a specialty, is for the payment of

money, and supposing it to be within the statute, the question arises, has it been assigned within the meaning of the statute? Endorsement in blank of a specialty is not an assignment within the meaning of the statute. It is not necessary the assignment should be by deed, but words of assignment must be used importing an actual transfer for a valuable consideration. "Assignment" and "endorsement" are often erroneously employed as convertible terms, from the fact, perhaps, that assignments were usually *endorsed* on the bond or instrument intended to be transferred. Endorsements in blank pass the title to promissory notes, bills of lading, bankers' drafts, dock orders, &c., to the holder, rendering them negotiable paper. But in regard to specialties a different rule must obtain, and an endorsement in blank can pass no title, unless the instrument is negotiable. 1 *Smith's Leading Cases* 259, *notes*.

2. Is this improvement certificate negotiable so that an action can be maintained by any person who has honestly acquired it? If it is, then a purchaser in good faith holds it free from any equitable defence which the corporation might have made against the first holder. It was not the intention of the corporation to make these improvement certificates negotiable, and thus be barred of all equitable defences against the contractor. Bonds of a corporation are no more negotiable than the bonds of an individual, unless clearly so intended. It may be said the certificate "entitles Shaler, Gardner & Co., or the holder, to receive," &c. This does not mean anybody who may happen to be the holder, but the legal holder by endorsement, as is shown further on, where it says, it shall be "transferable by endorsement"—unnecessary words, if the "holder" could acquire the title by possession merely. It is not then payable to the holder. But it may be said that it is negotiable, because transferable by endorsement. This does not follow, for an instrument for the payment of money *under seal* is not negotiable, although it appear to be so on its

face. *Clark* v. *Farmers Manuf. Co.*, 15 *Wend.* 256.    It was also so held in case of *East India bonds*, which were under the seal of the company, and payable " by endorsement hereon." *Glyn* v. *Baker*, 13 *East* 509.    The court there distinguished them from " bills of exchange and securities of that nature, in which the legal interest passes under the law merchant by endorsement and delivery to another."    But it is not negotiable upon its face : the terms of the instrument show it was never intended to pass from hand to hand.    The interest was not to commence until the assessment had been confirmed—an uncertain point of time ; the certificates were to be received by the collector of assessments in payment for the assessment upon which they were drawn ; the corporation had a year to collect the assessments to meet the certificate—and if not then collected, they were pay only " upon thirty days' notice of default in the collection of the assessment."    The condition to pay on notice of default is similar to the condition in the India bond in 13 *East* 507.    Such conditions are unusual in negotiable instruments, and would impair, if not wholly destroy their value as such.    The fact, that the interest was not to commence till the confirmation of the assessment, the time given to the corporation to collect, and the notice of default required, all show that it was intended to be of a private nature, local in its operations, framed for the convenience of the corporation, the contractor, and perhaps, those assessed for the improvement, and not an instrument of a public negotiable character to pass from hand to hand like bills of exchange and other commercial paper.

*C. H. Winfield*, contra.

1. The statute provides for the assignment of bonds and other writings obligatory and bringing suit in name of assignee, but does not prescribe any form or mode of assignment. *Nix. Dix.* 542, § 2, *Title Obligation.*

2. An assignment is good and sufficient, whether by

deed, parol, endorsement, or mere delivery for a consideration. *Coke Litt.* § 377, *fol.* 232 ; *Dunn* v. *Snell*, 15 *Mass.* 481; *Green* v. *Hart*, 1 *J. R.* 581, 491; *Hutchings* v. *Low*, 1 *Green* 246 ; *Allen* v. *Pancoast, Spencer* 71, *and cases there cited ; Jones* v. *Witter*, 13 *Mass.* 304; *Ford* v. *Stewart*, 19 *J. Rep.* 342.

3. An assignment, when alleged of any subject, should always be construed in connection with the law of transfer applicable to that particular subject matter. *Hutchings* v.· *Low*, 1 *Green* 247.

4. A bond or specialty made payable to holder is precisely anologous to a bank note payable to bearer, and subject to the same rule of law. Whoever has honestly acquired it is the true owner. *Georgier* v. *Melville*, 3 *Barn. & Cress.* 45. The case of the *India bonds*, 13 *East.* 509, relied on to support the demurrer, is not applicable here. They were made payable to the obligee, his executors, &c.; and further, the person who sought to recover thereon obtained them by fraud. *Vide the opinion of Bayley*, Justice.

5. The writing obligatory in question is peculiar. It certifies the right of Shaler, Gardner & Co., or the holder, to receive, &c. Then, further on, the mode of assignment is prescribed to be by simple endorsement. And still further on, the defendants bind themselves to pay to the holder, without naming any person to whom they are bound, and therefore it is the same as if Shaler, Gardner & Co. had not been mentioned in any part of the certificate, and defend ants had issued in favor of the bearer, as in the case of the Prussian bonds. It passes from hand to hand in this manner, and was so designed. This is the common usage, and has been recognised by defendants from their incorporation hitherto. *Morris Canal and Banking Co.* v. *Fisher*, 1 *Stockton* 694, 697, *&c.; Georgier* v. *Milville et al.*, 3 *Barn. & Cress.* 45 ; 1 *Parsons on Contracts* 240.

The character of the certificate shows absolute title in a *bona fide* holder, a id this, not being *contra statutem*, de prives the maker of all defence against the assignee upon the instrument. 1 *Stockton* 699.

The defendants issued, and still do issue these certificates with full knowledge of their character and the manner in which they are negotiated. They cannot now take advantage of their own wrong. 1 *Stockton* 700.

The time in which the defendants bound themselves and their successors to collect the money to pay said certificate having expired, and all the conditions precedent (if the certificate contains any) having been met or disregarded, the same has become an absolute obligation to pay the money mentioned therein to the holder. The value of the certificate may be lessened by its conditions, but they cannot destroy it nor take away its character as an assignable instrument under the statute.

The fact that "a purchaser in good faith holds it free from any equitable defence which defendants might have made against the first holder," if assignee can maintain suit in his own name, is without force. The certificates are issued only on the certificate of the city surveyor that the work has been performed, and the amount is due to contractor. If surveyor make a mistake or is guilty of fraud his sureties are liable to remunerate the city. And as to defences arising after the issue, even by common law the obligor was precluded after notice of assignment.

*Vroom*, in reply.

1. In *Green* v. *Hart*, 1 *Johns.* 580, the complainant filed his bill in chancery, to be paid out of a mortgage the principal and interest of a note, for which the mortgage had been given as collateral security. It was a proper case for equity, but can have no bearing upon the case in point.

In *Ford* v. *Stuart* 19 *Johns.* 342, a judgment was assigned *by writing*, though not under seal. We do not contend the assignment must be by deed.

In *Hutchings* v. *Low*, 1 *Green* 246, a check was payable to *bearer*, and not under seal. The court there used the words bearer and assignee as synonymous; but it is evident that the statute referred to was not under consideration, for the check was negotiable by delivery.

In *Allen* v. *Pancoast, Spencer* 68, the question was whether the assignment should be by deed. If any other point were decided it was *obiter dictum;* none other was decided.

*Dunn* v. *Snell,* 15 *Mass.* 481, was an equitable assignment of a judgment, and in *Jones* v. *Wilson* 13 *Mass.* 304, the question of assignment was one of proof as to whether it was such an assignment in equity as would be supported by courts of law in all respects, except permitting an action to be maintained in the *name of the assignee.*

2. Most of the cases cited against the demurrer are cases of equitable assignments or on proof—none were brought up on demurrer, where the sufficiency of the assignment in law must appear upon the face of the pleadings.

In *Morris Canal* v. *Fisher,* 1 *Stockton* 667, the bonds in question were payable not to a particular person but to bearer, which Justice Elmer, who delivered the opinion of the court, considered "an important, and, perhaps, indispensable circumstance to show that this was in fact their design, and that they were so used."

The allegation that these certificates were designed to pass from hand to hand, that it is the common usage, has been recognised by defendants from their incorporation hitherto; that they issued, and still do issue them with full knowledge of the manner in which they are negotiated *et id omne genus,* is neither law nor fact, but whether fact or not, cannot be tried on demurrer.

The opinion of the court was delivered by the

CHIEF JUSTICE. The common law doctrine, that choses in action are not assignable at law, so as to vest a right of action in the assignee, is subject to modifications. It has long been settled that it does not extend to bank notes, bills of exchange, or promissory notes negotiable upon their face. *Miller* v. *Race,* 1 *Burr.* 452; *Grant* v. *Vaughan,* 3 *Burr.* 1516; *Peacock* v. *Rhodes, Doug.* 636. And the ex-

emption has been extended to exchequer bills, government securities, and the coupon bonds of corporations, made payable to bearer, and designed to be sold and transferred as negotiable paper. *Wookey* v. *Pole,* 4 *Barn. & Ald.* 1; *Gorgier* v. *Milville,* 3 *Barn. & Cress.* 45 ; *Lang* v. *Smith,* 7 *Bing.* 284; *Morris Canal and Banking Company* v. *Fisher,* 1 *Stock.* 667; 1 *Parsons on Con.* 240.

In all these cases the securities were designed to be circulated, and to pass by delivery as money or by sale and transfer, the legal as well as the equitable title upon such transfer being vested in the holder free from all equities, as between the obligor and any prior holder of the security.

The security upon which the present action is founded does not fall within the operation of the principle adopted in these cases. It is not an obligation to pay the bearer or the holder of the certificate a specific sum, with ascertained interest, at a specified time. It does not appear upon its face to have been designed to circulate as money or for sale and transfer by delivery, nor is there any averment in the declaration that it did so circulate; on the contrary, the terms of the instrument forbid any such inference. It is a special contract for the payment of labor done for the city in the improvement of Palisade avenue. It obliges the city to pay to Shaler, Gardner & Co., or the holder, $500, with interest at six per cent. from the time the assessment shall be confirmed by common council, in amounts of not less than $50 at any time, as the money on the assessment shall come to the hands of the treasurer. It stipulates that the certificate shall be receivable by the collector in payment for the assessments upon which it is drawn, and shall be transferable by endorsement. It contains a covenant that the city will use due diligence in making and collecting the said assessment, and if not collected to meet the certificate within one year from its date, the city will pay the said sum of $500, with interest, to the holder upon thirty days' notice of

default. The stipulation that the certificate shall be receivable in payment of the assessment before its maturity, that the city shall use due diligence in making and collecting the assessment, and that thirty days' notice of default in collecting the assessment shall be given before the city is chargeable, are all inconsistent with the use of the certificate as money or of its sale and transfer by delivery.

The certificate is transferable only by endorsement. That, I think, is the only fair and legitimate construction of the contract. It is true that in terms it entitles Shaler, Gardner & Co. or *the holder* to receive from the city $500. If the certificate had been issued to the plaintiff; if he claimed as an original holder of the paper, and not by transfer, his title as holder under the terms of the contract would be clear. But he claims by assignment, and he must establish his claim by that title. In express terms, the certificate is made transferable by endorsement. It is true that, by the last clause of the certificate, as well as by the first, the city engage to pay the money to the holder; but that must be interpreted to mean the holder in one of the modes provided for in the contract, *viz.* either by receiving it under the original issue or by endorsement. Upon any other construction, the clause providing for the mode of transfer is without effect or meaning.

Both the character of the instrument sued upon and its express terms prohibit the plaintiff from recovering as the mere holder or bearer of the certificate. He can show title only by proof of his being the original holder or by valid assignment from the owner. He claims by assignment, and the sole question for consideration is whether the assignment averred operates as a valid transfer. The terms of the contract are fully answered by a simple endorsement. Whether a general endorsement will make the paper negotiable and transferable by mere delivery, or whether the endorser will hold the certificate free from

all equities between the city and the original holder, are questions not in issue. The only question is, whether, under the terms of the contract and by the law of the land, an endorsement and delivery of the paper by the true owner to the plaintiff will operate as a valid assignment. At common law, a sealed instrument could not be assigned, though the instrument upon its face was made payable to bearer or to the obligee and his assigns. *Sheppard* v. *Stites*, 2 *Halst.* 90. But under our statute, assignments of bills, bonds, and other writings obligatory for the payment of money are good and effectual in law, and vest the right of action in the assignee. *Nix. Dig.* 542, § 2.

And it is immaterial whether in terms they are made transferable or not. *Carhart* v. *Miller*, 2 *South.* 573; *Sheppard* v. *Stites*, 2 *Halst.* 90. The statute provides no particular mode of assignment. It may be by writing under seal, by writing without seal, or by mere delivery for value. *Hutchings* v. *Low*, 1 *Green* 246; *Allen* v. *Pancoast*, *Spencer* 68; *Gregory* v. *Freeman*, 2 *Zab.* 405.

Inasmuch as by the statute the instrument is made assignable not in any specified mode, and as by the terms of the contract it is made assignable by endorsement, the holder may in that mode acquire title to the instrument and a right to maintain an action in his own name.

It is urged that a mere endorsement of a name upon the certificate is not a recognized or legal mode of transfer of bills obligatory. But why under the statute and the terms of this contract should it not be regarded as transferring a valid title? If the instrument had been in other respects so framed as to be designed for circulation as money, and had the clause touching the mode of transfer been omitted, upon the authority of the cases cited the paper would have been transferable by mere delivery. If such an instrument provides that it shall be transferred, not by mere delivery but by endorsement, will that render the transfer invalid? The declaration in this case avers that the certificate was for a valuable consideration en-

dorsed, assigned, transferred, and delivered to the plaintiff without the endorsement, the averment of title would be sufficient. The fact of the endorsement, if it does not confirm, cannot impair the plaintiff's title to the instrument, or his right of action upon it.

The demurrer should be overruled.

CITED in *Morrow* v. *Inhbts. of Vernon*, 6 *Vr.* 493; *Knapp* v. *City of Hoboken*, 9 *Vr.* 372.